UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,                                            Case No. 1:05-CR-180-01

v.                                                             HON. GORDON J. QUIST

DANIEL BRYANT SIMPSON,

      Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In 2006, Defendant, Daniel Bryant Simpson, was convicted of Distributing Images of Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (ECF No. 32.)  Mr. Simpson served his period of incarceration, but on July 7, 2015, he was sentenced to 10 months in custody followed by 10 years of supervised release after pleading no contest to ten violations of the conditions of his supervised release. (ECF No. 56.)  In 2018, Mr. Simpson violated the conditions of his second term of supervised release and was sentenced to another 10 months in custody followed by 10 years of supervised release. (ECF No. 72.)  He began serving his third term of supervised release on July 23, 2019.  In March 2020, Mr. Simpson admitted guilt to gaining unauthorized access to the internet and maintaining an on-line dating profile. (ECF No. 82.)  The Court, however, found that a revocation of supervised release was not warranted. (ECF No. 83.)  Instead, the Court modified Mr. Simpson's supervision to require him to reside in a Residential Re-Enter Center for a period of six months. (*Id.*)

On November 6, 2020, the Court signed a Petition for Warrant that alleged Mr. Simpson violated three conditions of his supervision. (ECF No. 86.)  The three alleged violations were

discovered during an investigation into an IP address that was suspected of accessing child pornography. After Mr. Simpson pled not guilty to the violations on December 3, 2020, the Court held an evidentiary hearing in which it heard the testimony of FBI Agent Trisha Kovac and Probation Officer Matthew Kakabeeke. Having considered the record, the Court finds, by the preponderance of evidence, Mr. Simpson committed the three violations of his supervised release.

The first charge is that Mr. Simpson violated Special Condition Number 3, which provides that Mr. Simpson "must not associate with persons under the age of 18, except in the presence of a responsible adult, who is aware of the nature of the defendant's background and criminal offenses, and who has been approved in advance by the probation officer." (ECF No. 86 at PageID.352.) The Petition alleged that Mr. Simpson associated with Lacey Myers' two minor children without notifying Ms. Myers of his criminal history and without seeking advanced approval from his probation officer.

At the hearing, Agent Kovac testified that the government found photos of Mr. Simpson with Lacey Myers' two minor children (ages two and three) on a cell phone. Agent Kovac subsequently interviewed Lacey Myers. Ms. Myers told Agent Kovac that she first met Mr. Simpson via the social media application "MeetMe" in "about February 2020."[1] Ms. Myers and Mr. Simpson had a relationship until May 2020. Ms. Myers told Agent Kovac that Mr. Simpson never informed her that he was a sex offender. However, Mr. Simpson told Agent Kovac that he fully informed Ms. Myers of his sex offender status. Probation Officer Kakabeeke testified that Mr. Simpson never requested permission to associate with Ms. Myers' minor children. Thus, regardless of what Mr. Simpson told Ms. Myers about his sex offender status, Mr. Simpson

---

[1] The Court notes that one Facebook message appears to show that Ms. Myers exchanged messages with Mr. Simpson on January 20, 2020. (*See* Image #11 in Ex. 2.)

violated Special Condition Number 3 because he did not seek advanced approval from his probation officer to associate with Ms. Myers' two minor children.

The second charge is that Mr. Simpson violated Special Condition Number 7, which provides that Mr. Simpson "must use only those computer(s) and/or computer related device(s) approved in advance by the probation officer." (ECF No. 86 at PageID.353.) The Petition alleged that Mr. Simpson had not obtained approval for eight cellphones, two computers, two digital cameras, and an internet-accessible television.

The devices in question were seized at Mr. Simpson's mother's house pursuant a search warrant executed on September 3, 2020. Mr. Simpson previously resided at his mother's residence but had been living at KPEP since April 2020, as required by the March 11, 2020, modification of his supervised release. Since the filing of the Petition, the government has determined that some of the devices belong to Mr. Simpson's mother. The Court need not decide whether Mr. Simpson used each device listed in the Petition. The use of one such device constitutes a violation of this condition.

Agent Kovac testified that the government seized three cellphones that were located in "Mr. Simpson's room" at his mother's residence. Agent Kovac determined that the room was Mr. Simpson's room based on (1) Probation Officer Kakabeeke's prior description of Mr. Simpson's room being the room within the converted garage, and (2) the room had items she could ascertain belonged to Mr. Simpson such as clothing and weight lifting equipment. The Samsung Cricket cellphone (identified as 1B2 on Exhibit 1) is a smartphone and was found on the dresser in Mr. Simpson's room. Agent Kovac also testified that she concluded it was Mr. Simpson's phone based on the contacts in the phone, the text conversations on phone, and the over 6,000 images on the

phone that were consistent with the phone being owned by Mr. Simpson. Probation Officer Kakabeeke testified that Mr. Simpson did not have advance approval to use this smart phone.

Defense counsel argues that the government has not shown by a preponderance of evidence that Mr. Simpson used the phone. It is true that Mr. Simpson was living at KPEP at the time, but he was permitted to leave KPEP to go to work, which was located 3 to 5 miles from his mother's residence. Thus, according to the government, Mr. Simpson had plenty of opportunity to go to his mother's house when he was supposed to be at work. The Court need not decide this issue either because of the images found on the cellphone. Having reviewed the images on the phone in closer detail, the Court finds that Mr. Simpson used this device to take pictures of himself with Ms. Myers' children.[2] (Images #3, #5, #6, #7 in Ex. 2.) These images, along with the testimony described above, establish by a preponderance of evidence that Mr. Simpson used the smartphone without prior approval of his probation officer.

The third charge is that Mr. Simpson violated Special Condition Number 8, which provides that Mr. Simpson "must provide the probation officer with all usernames, email addresses, passwords, social media accounts, and any other forms of internet identification, and must not create additional accounts, unless approved in advance by the probation officer." (ECF No. 86 at PageID.355.) The Petition alleged that Mr. Simpson did not disclose or seek permission from his probation officer to use Facebook, Snapchat, MeetMe, and Plenty of Fish. Similar to the devices listed in the second charge, the Court need not decide whether Mr. Simpson failed to disclose or seek approval of each social media account. The failure to disclose one account is a violation of this condition.

---

[2] These photos that are typically referred to as "selfies."

4

At the hearing, Probation Officer Kakabeeke testified that Mr. Simpson did not disclose or seek permission to use any of the above listed social media platforms. Ms. Myers told Agent Kovac that she met Mr. Simpson through the "MeetMe" social media app and that she messaged Mr. Simpson via Facebook. These conversations are supported by screenshots of the conversations. (Images #8, #9, #10, #11, #12 in Ex. 2.) Mr. Simpson also admitted to Agent Kovac that the "Damien Callahan" Facebook account was his. This account was used as recently as August 26, 2020. Because Mr. Simpson failed to disclose or seek permission to use these accounts, he has violated Special Condition Number 8.

One last issue deserves further discussion—the timing of the alleged violations. At the conclusion of the hearing, defense counsel argued that Court must find that any violation occurred after the most recent term of supervision commenced—July 23, 2019. The Court agrees. Mr. Simpson cannot be sentenced for a violation of supervised release that occurred during a prior term of supervision. *United States v. Wing*, 682 F.3d 861, 863 (9th Cir. 2012). The Court, however, finds by a preponderance of evidence that three violations occurred in 2020—not before July 23, 2019. The uncontroverted evidence established that Mr. Simpson met Ms. Myers in 2020. Each violation is connected to Ms. Myers: (1) Mr. Simpson associated with Ms. Myers's two minor children; (2) the cellphone contained pictures of Ms. Myers and her children, and (3) Mr. Simpson interacted with Ms. Myers via MeetMe and Facebook. Thus, each violation occurred (or was completed) in 2020 and after Mr. Simpson began serving the current term of supervised release.[3]

---

[3] Defense counsel also suggested that Mr. Simpson cannot be sanctioned for the same conduct that resulted in this Court modifying Mr. Simpson's current term of supervision by adding the condition that he must reside at a Residential Re-Entry Center for a period of six months. At the March 11, 2020, hearing, Mr. Simpson admitted that he did not disclose to the probation officer his username and password information to old on-line dating profiles that he was accessing at a public library computer. The Court did not revoke supervision, and Mr. Simpson continues to serve the same term of supervised release. The pending charges do not involve using on-line dating sites at a public library computer. Further, the Court is satisfied that at least some of the conduct at issue in the current violations occurred after March 11, 2020. For example, Mr. Simpson admitted that the "Damien Callahan" Facebook account was one of his alias accounts, and the account was used as recently as August 26, 2020. Further, Mr. Simpson was

Accordingly, Mr. Simpson is adjudicated guilty of violations 1, 2, and 3.  As set forth in the Violation Worksheet (ECF No. 91), all of Mr. Simpson's violations are Grade C. His criminal history category is I. The guideline range is 3 to 9 months. The Court is considering a sentence of incarceration that exceeds the guideline range because of Mr. Simpson's total disregard for the Court's orders as to supervised release. Guideline sentences, so far, have failed to deter Mr. Simpson. (*See* ECF No. 86 at PageID.355-356.)

Dated: December 10, 2020                                             /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                              UNITED STATES DISTRICT JUDGE

---

under the continued obligation to disclose all of his social media accounts and passwords to his probation officer, and Probation Officer Kakabeeke testified that Mr. Simpson never disclosed this account.